## CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Commonwealth Land Title Ins. Co.

v.

Allen C. Tanner, Jr.

July 10, 1995

Case No. (Law) 20117-RW

BY JUDGE N. WESCOTT JACOB

I have reviewed my notes from the trial of this case on April 11 and 12, 1995. I have also reviewed the post-trial briefs recently filed by both parties.

The evidence in this case discloses that the defendant, Allen C. Tanner, Jr., is an attorney engaged in the practice of real estate law in the City of Newport News. In January, 1988, Mr. Tanner made application to the plaintiff, Commonwealth Land Title Insurance Company, to become an approved attorney to handle real estate transactions, to which the Title Company would be issuing title insurance policies. Tanner was accepted by the plaintiff as one of its approved attorneys.

In 1991, Tanner was employed by a Mr. and Mrs. Jusino to represent them in the purchase of real estate in the City of Newport News from a Mr. and Mrs. Grubbs. In late 1991, Tanner prepared an Attorney's Report of Title for the plaintiff, showing the state of title on this property. The report showed that there were deeds of trust on said property which would have to be paid and released in order to pass good title to the Jusinos. The noteholder in one of the deeds of trust was C. Adrian Presson. On January 6, 1992, Tanner wrote Presson asking for a payoff figure for this deed of trust. On January 13, 1992, Presson wrote Tanner giving him a payoff figure. It is admitted that someone in the Tanner office inadvertently put this letter in the wrong file. On January 31, 1992, Tanner closed this real estate transaction and filed an Attorney's Final Certificate of Title with the plaintiff, showing that a deed of trust to secure the new lender had been

recorded but that the prior deed of trust securing C. Adrian Presson was still of record.

On February 4, 1992, Tanner sent a check to David Murray, Trustee for C. Adrian Presson, in the amount of $29,293.00. David Murray was the Trustee in the deed of trust which secured the note payable to Presson. Unfortunately, Murray converted this money to his own use and never paid the noteholder. On August 21, 1992, the plaintiff paid Presson $31,412.44 under the title insurance policy it had issued.

The defendant raises two questions in his post-trial briefs.

(1) Was there sufficient evidence to support a finding that a contract existed between Tanner and Commonwealth Land Title Insurance Company creating an attorney/client relationship?

(2) Whether the existence of an attorney-client relationship is a factual issue that must be submitted to the jury?

It is well-settled law in Virginia that an attorney-client relationship may be implied from the conduct of the parties. An attorney may be employed without formalities of any kind. The contract may be made by parol and is often largely implied from the acts of the parties. Neither is the relation dependent upon the payment of fees; it may exist between two parties, though a third person pays for the attorney's services.

In this case, Tanner had made application and had become an approved attorney for the Title Company. He was rendering a legal service for the plaintiff and was being compensated for said service even though the compensation came from a third party and not from the plaintiff. There can be no question that an attorney-client relationship existed, and the defendant owed the plaintiff the duty to close the transaction with reasonable care and skill.

Tanner next contends that the existence of an attorney-client relationship is a factual issue that must be submitted to the jury.

Again, it is well-settled law in Virginia that when material facts are not genuinely in dispute, the issue of whether or not a contract exists is a question of law to be decided by the Court. In the present case, there were no material facts in dispute. There was evidence by the defendant that Mr. Grubbs came to the defendant's office very upset and insisted that the defendant issue a check and deliver it to Murray. Grubbs denied this, but in no event could Grubbs authorize payment to Murray. There is absolutely no evidence that Murray had any authority to receive payment.

Since the evidence is clear that Tanner made payment to Murray without authority, he is liable to Commonwealth for their loss.